IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| PAULETTE PAILIN, | : | |
| --- | --- | --- |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 10-4556 |
| CAROLYN COVLIN, Acting | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

## MEMORANDUM

BUCKWALTER, S.J.                                                                            November 5, 2013

Currently pending before the Court are Defendant Commissioner of Social Security's Objections to the Report and Recommendation of United States Magistrate Judge Henry S. Perkin. For the following reasons, the Objections are sustained.

**I. PROCEDURAL HISTORY**

On June 27, 2008, Plaintiff Paulette Pailin protectively an application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 301, et seq. (R. 148–54.)[1] Her claim alleged disability, since May 14, 2007, due to asthma, a learning disability, attention deficit hyperactivity disorder ("ADHD"), a seizure disorder, bronchitis, and a sleep disorder. (Id. at 203.) The record also contained diagnoses of major depressive disorder, post traumatic stress disorder ("PTSD"), knee and back pain, and anxiety. (Id. at 69, 81, 203.)

---

[1] For ease of discussion, citations to the administrative record will be referenced as "R. [page number]."

The state agency denied Plaintiff's application on September 26, 2008, and Plaintiff timely requested a hearing before an administrative law judge ("ALJ"). (Id. at 9, 81–84.) Following the hearing—at which Plaintiff, her aunt, and a vocational expert testified—Administrative Law Judge ("ALJ") Owen Katzman issued a decision, dated December 23, 2009, deeming Plaintiff "not disabled." (Id. at 9–18.) On July 7, 2010, the Appeals Council denied Plaintiff's request for review, (id. at 1–3), making the ALJ's ruling the final decision of the agency. See 20 C.F.R. § 416.1472.

Plaintiff initiated the present civil action in this Court on September 9, 2010. His Request for Review set forth three alleged errors, as follows: (1) the ALJ erred in his Step Three listing analysis; (2) the ALJ erred in his residual functional capacity ("RFC") analysis; and (3) the ALJ did not fairly consider Plaintiff's impairments of asthma, orthopedic impairments, or the entirety of her impairments in combination. On September 19, 2013, United States Magistrate Judge Henry S. Perkin issued a Report and Recommendation ("R&R") suggesting a remand of the case due to the ALJ's failure to either properly analyze the severity of Plaintiff's ADHD, PTSD, and borderline intellectual functioning, and anxiety; or to discuss or evaluate the testimony of Plaintiff's aunt, Paulette Murrell.

Defendant filed Objections to the R&R, on September 27, 2013, asserting the following: (1) to the extent the ALJ may have erred at Step Two, any such error was harmless because the ALJ did not deny Plaintiff's claim at Step Two; and (2) the ALJ discussed and was not required to explicitly provide specific weight to Plaintiff's aunt's testimony. As no response to these Objections has been filed, they are now ripe for judicial consideration.

## II.  STANDARD OF REVIEW[2]

### A.  Standard for Judicial Review of an ALJ's Decision

It is well-established that judicial review of the Commissioner's decision is limited to determining whether "substantial evidence" supports the decision. Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000). "Substantial evidence 'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (quoting Pierce v. Underwood, 487 U.S. 552, 564–65 (1988)). When making this determination, a reviewing court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986). In other words, even if the reviewing court, acting *de novo*, would have decided the case differently, the Commissioner's decision must be affirmed when supported by substantial evidence. Id. at 1190–91; see also Gilmore v. Barnhart, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005) (holding that the court's scope of review is "'limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact'") (quoting Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001)).

### B.  Standard of Review of Objections to a Report and Recommendation

Where a party makes a timely and specific objection to a portion of a report and recommendation by a United States Magistrate Judge, the district court is obliged to engage in *de*

---

[2] The five-step sequential analysis for assessing a disability claim was adequately summarized by the Magistrate Judge. In lieu of repeating that discussion, the Court incorporates by reference this portion of the R&R into this Memorandum.

3

*novo* review of only those issues raised on objection. 28 U.S.C. § 636(b)(1); see also Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In so doing, a court may "accept, reject, or modify, in whole or in part, the findings and recommendations" contained in the report. 28 U.S.C. § 636(b)(1). The court may also, in the exercise of sound judicial discretion, rely on the Magistrate Judge's proposed findings and recommendations. See United v. Raddatz, 447 U.S. 667, 676 (1980).

## III. DISCUSSION

### A. Whether the ALJ's Step Two Analysis Requires Remand

Defendant's first Objection concerns the Magistrate Judge's finding of error in the ALJ's severity analysis. Specifically, during his discussion at Step Two of the sequential analysis, the ALJ expressly found that Plaintiff's major depressive disorder and history of substance abuse were "severe" within the meaning of the regulations, but that her seizure disorder and asthma were not. On review of the ALJ's decision, the Magistrate Judge remarked that this analysis completely disregarded the ample evidence throughout the record of Plaintiff's ADHD, borderline intellectual functioning, PTSD, and anxiety. As such, the Magistrate Judge determined that the ALJ's failure to make a severity finding concerning such impairments required that the case be remanded for further proceedings. In the course of doing so, the Magistrate Judge also directed that the ALJ re-examine his severity findings regarding Plaintiff's seizure disorder and asthma. Defendant now objects that remand is futile because: (1) the ALJ included these impairments in his RFC assessment, making any error at Step Two harmless; and (2) remand for further discussion of these impairments would be futile because Plaintiff has failed to demonstrate any additional functional limitations resulting from such impairments.

Step Two of the sequential analysis places a burden on the claimant to show that her impairment is severe. 20 C.F.R. § 416.920(c). An impairment is "severe" when it is "of a magnitude sufficient to limit significant the individual's 'physical or mental ability to do basic work activities.'" Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir. 1982) (quotations omitted). Conversely, a non-severe impairment does not significantly limit or has only a minimal effect on a claimant's physical or mental ability to do basic work activities.[3] 20 C.F.R. § 416.921(a); see also Bowen v. Yuckert, 482 U.S. 137, 154 n.12 (1987).

Notably, "an error at this step is harmless as long as the ALJ proceeds past [S]tep [T]wo: if the ALJ finds in a plaintiff's favor at step two, 'even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.'" Williams v. Comm'r of Soc. Sec., No. Civ.A.5637, 2013 WL 4500335, at *17 (D.N.J. Aug. 21, 2013) (quoting Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [plaintiff's] favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.")); accord Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("any error here became harmless when the ALJ reached the proper conclusion that [plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step"); Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) ("[T]he ALJ considered any limitations posed by the [impairment] at Step 4 . . . . any error that the ALJ made in failing to include the [impairment] at Step 2 was harmless"). Thus, "[w]here the ALJ found that Plaintiff

---

[3] These basic work activities include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting." 20 C.F.R. § 416.921(b).

suffers from even one severe impairment, any failure on the ALJ's part to identify other conditions as severe does not undermine the entire analysis." Faircloth v. Colvin, No. Civ.A.12-1824, 2013 WL 3354546, at *11 (W.D. Pa. 2013).

When, on the other hand, the ALJ simply fails to make any finding of severity or non-severity with respect to an impairment of record—as opposed to an explicit but incorrect finding of non-severity—the analysis is somewhat more complex. "It is axiomatic in social security cases, that although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence that he rejects and the reasons for discounting that evidence." Melius v. Colvin, No. Civ.A.12-848, 2013 WL 5467071, at *3 (W.D. Pa. Sept. 30, 2013) (citing Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001)). "Where the ALJ fails to consider and explain his reasons for discounting all of the relevant evidence before him, he has not met his responsibilities under the Act." Weber v. Astrue, No. Civ.A.07-184, 2008 WL 4425802, at *4 (W.D. Pa. Sept. 30, 2008) (quoting Burnett v. Apfel, 220 F.3d 112, 122 (3d Cir. 2000)). An ALJ's error at Step Two can prejudice a claimant by limiting the impairments that are evaluated during Step Three or that are included in an RFC determination. Jennings v. Astrue, No. Civ.A.09-1642, 2009 WL 7387721, at *16 (E.D. Pa. Nov. 30, 2009). Thus, unlike the situation where an ALJ considers evidence of an impairment and deems that impairment non-severe, an ALJ's complete disregard of an impairment at Step Two and in the remaining parts of the sequential analysis can constitute grounds for remand. Rupard v. Astrue, 627 F. Supp. 2d 590, 596 (E.D. Pa. 2009) ("The ALJ made no finding one way or the other concerning Plaintiff's hand impairment [at Step Two]. This silence cannot be interpreted as a determination that Plaintiff's hand impairment is not 'severe,' especially considering the fact that the ALJ expressly

determined that Plaintiff's depression and drug and alcohol abuse are non-severe impairments."); Berrios-Vasquez v. Massanari, No. Civ.A.00-2713, 2001 WL 868666, at *7 (E.D. Pa. May 10, 2001) (holding that where the ALJ failed to even mention certain impairments, even though there is sufficient evidence in the record to fairly raise the issue of their impact on the Plaintiff's ability to perform basic work activities, the ALJ should have explicitly considered the evidence of such impairments "instead of deciding sub silentio that these impairments were not severe").

As such, a determination of whether a case should be remanded for a failure to discuss an impairment at Step Two turns on the key question of whether that omission affected the ALJ's consideration of that impairment during the RFC assessment. It is well-established that regardless of the severity findings at Step Two, an ALJ is still required to analyze what limitations the non-severe impairments cause for purposes of the RFC assessment. See Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996) (the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" in assessing RFC); see also 20 C.F.R. §416.945(a)(2). "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." SSR 96–8p, 1996 WL 374184, at *5; see also Brown v. Astrue, No. Civ.A.09-3797, 2010 WL 4455825, at *4 (E.D. Pa. Nov. 4, 2010) ("Functional limitations caused by all impairments, whether found to be severe or non-severe at step two, must be taken into consideration at steps three, four and five of the sequential evaluation."). "Where the Commissioner finds at least one of a claimant's impairments to be severe and adequately incorporates any limitations resulting from both severe and non-severe

7

impairments into his residual functional capacity assessment, the specific determinations at the second step concerning the non-severe impairments are of no dispositive significance." Lambert v. Astrue, No. Civ.A.08-657, 2009 WL 425603, at *13 (W.D. Pa. Feb. 19, 2009); see also Roberts v. Astrue, No. Civ.A.08-625, 2009 WL 3183084, at *5 (W.D. Pa. Sept. 30, 2009); Lee v. Astrue, No. Civ.A.06-5167, 2007 WL 1101281, at *3 n.5 (E.D. Pa. April 12, 2007). Harmless errors do not require remand of a case to the Commissioner of Social Security. Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).

In the present case, the Magistrate Judge correctly found the record to reflect that Plaintiff suffered from PTSD, ADHD, Depressive Disorder, Borderline Intellectual Functioning, and anxiety. As indicated in the Report and Recommendation, Plaintiff was given a diagnosis of PTSD, Depressive Disorder, and ADHD on March 31, 2008 at Hall-Mercer Community Mental Health Center, and was prescribed Lexapro and therapy. (R. 362–63.) Moreover, state agency physician, Jonathan Rightmyer, remarked that Plaintiff had "medically determinable impairment[s] of PTSD; Adhd; Mdd; Canabis Abuse, Early Remission; [and] BIF." (R. 306.) Yet, in the Step Two analysis, the ALJ found only that Plaintiff's major depressive disorder and history of substance abuse were severe, and that her asthma and seizure disorder were not severe. (R. 11.) The ALJ's failure to make a severity finding regarding the diagnosed PTSD, ADHD, and BIF was clearly in error. As aptly noted by the Magistrate Judge, "[t]his silence [regarding the other impairments] cannot be interpreted as a determination that Plaintiff's PTSD, ADHD, Borderline Intellectual Function or anxiety impairments are not 'severe.'" (Report & Recommendation 8.)

This failure, however, does not constitute grounds for remand. In constructing the RFC,

the ALJ specifically acknowledged the March 31, 2008 diagnosis of PTSD, Depressive Disorder, and ADHD, and explicitly addressed Plaintiff's testimony about anxiety and ADHD. (R. 15–16.) The ALJ then thoroughly reviewed the report of Dr. Rightmyer and adopted Dr. Rightmyer's residual functional capacity assessment as "appropriate[ly] describ[ing] what Plaintiff's limitations are." (R. 16.) Notably, Dr. Rightmyer's report expressly diagnosed Plaintiff with PTSD, ADHD, and BIF, thus making it reasonable to infer that limitations from those conditions were incorporated into his RFC assessment. By fully adopting Dr. Rightmyer's RFC as his own, the ALJ implicitly included limitations from all of Plaintiff's mental impairments—including those not addressed at Step Two—into the Step Five analysis. See Rutherford, 399 F.3d at 553 (noting that where the ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of plaintiff's obesity, the ALJ's failure to mention obesity as an impairment at Step Two does not constitute grounds for remand because the impairment was "factored indirectly into the ALJ's decision as part of the doctors' opinions."). At this juncture, Plaintiff has not identified any further limitations resulting from the impairments at issue that were not included in the RFC assessment.

To the extent that the Magistrate Judge recommended that the ALJ erred in finding that Plaintiff's asthma and seizure disorder were not severe, the Court likewise must disagree.[4] Although reasonable minds could disagree as to whether Plaintiff's seizure disorder and asthma met the *de minimis* severity standard at Step Two, the ALJ's finding that they were "non-severe" was nevertheless harmless. The ALJ specifically noted that "[e]ven if claimant required a sitting

---

[4] It appears as though the Magistrate Judge was only recommending remand based on the ALJ's failure to consider the various mental impairments at Step Two, and that he was simply urging the ALJ to reconsider his other severity findings at that time.

job (because of her leg complaints) and required work in a clean and temperate environment (because of the asthma), and needed to take seizure precautions (such as avoiding heights, moving machinery, sharp object[s]), the vocational expert still was able to identify jobs." (R. 17.) He went on to remark that Plaintiff would be able to perform the unskilled jobs of inspector and assembler. (Id.) Accordingly, even were the ALJ to reconsider and reverse his findings regarding the severity of these two impairments, the ultimate disability finding would remain unchanged.

In short, the Court notes that while the ALJ's opinion should have explicitly considered all impairments of record to allow for more meaningful judicial review, "[i]t is not the function of this Court to critique the stylistic components of ALJ decisions, but only to ensure that the decisions are supported by substantial evidence. No principle of administrative law 'require[s] that we convert judicial review of agency action into a ping-pong game' in search of the perfect decision." Coy v. Astrue, No. Civ.A.08-1372, 2009 WL 2043491, at *14 (W.D. Pa. July 8, 2009) (quoting NLRB v. Wyman–Gordon Co., 394 U.S. 759, 766 n. 6 (1969)); see also Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989). The ALJ mentioned all of Plaintiff's impairments—albeit not at the Step Two portion of his analysis—and considered all of the limitations resulting from those impairments when formulating an RFC or consulting with the vocational expert. To that end, substantial evidence supports the ALJ's determination of "not disabled."

> B. **Whether the ALJ's Discussion of Paulette Murrell's Testimony Requires Remand**

The Magistrate Judge also remarked that the ALJ erred by failing to discuss or evaluate

the testimony of Plaintiff's aunt, Paulette Murrell, regarding Plaintiff's dependence upon her. Specifically, Ms. Murrell testified that she sees Plaintiff everyday and feels she has a short attention span, suffers from asthma, had a seizure the summer prior to the hearing, deals with depression, and isolates herself. (R. 51–57.) In addition, she indicated that she cleaned Plaintiff's residence, reminded Plaintiff to take her medication, grocery shopped for her, and reminded her about medical appointments. (Id.) The Magistrate Judge found that because Ms. Murrell's testimony bolstered both medical and non-medical evidence offered by Plaintiff, and conflicted with other evidence upon which the ALJ relied, the ALJ's failure to give an adequate explanation for his rejection of her testimony constituted a basis for remand. Defendant now raises an Objection to this determination.

The Court must again sustain that Objection. As noted above, the law requires the ALJ to consider and weigh all relevant evidence, including nonmedical evidence from spouses, parents, other relatives, friends, and neighbors. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 122 (3d Cir. 2000). Social security jurisprudence explicitly states that in order to fully and thoroughly evaluate a claimant's testimony and allow for meaningful appellate review of the decision, an ALJ must expressly consider and address the impact of testimony from lay witnesses. See Petro v. Astrue, No. Civ.A.09–2900, 2010 WL 4104582, at *12 (E.D. Pa. Aug. 31, 2010) (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)). Nonetheless, while an ALJ must make a credibility finding regarding the claimant's testimony by addressing, in part, any lay testimony, the ALJ need not make an explicit credibility finding regarding the lay testimony itself.[5] See

---

[5] To the extent the Magistrate Judge cites Social Security Ruling 96-7p for the proposition that "[t]he reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision," his reliance on this Ruling is misplaced. SSR 96-7p

Watson v. Astrue, No. Civ.A.08-1858, 2009 WL 678717, at *4 (E.D. Pa. Mar. 30, 2009) ("[T]here is no requirement, statutory or otherwise, that the ALJ make an explicit credibility finding of any lay witness."); Bleistein v. Apfel, No. Civ.A.97-6717, 1999 WL 58655, at *3 (E.D. Pa. Jan. 27, 1999) ("While the ALJ's decision must be 'accompanied by a clear and satisfactory explication of the basis on which it rests,' . . . there is no statutory requirement that the ALJ make an explicit credibility finding of a lay witness."); Bailey v. Astrue, No. Civ.A.07-4595, 2009 WL 577455, at *11 (E.D. Pa. Mar. 4, 2009) (finding that ALJ's failure to explicitly address testimony of plaintiff's mother was not error where ALJ weighed medical testimony against Plaintiff's testimony and mother's testimony was merely cumulative).

In the present case, the ALJ engaged in a lengthy discussion of Plaintiff's testimony and its credibility. (R. 13–14.) During the course of that discussion, the ALJ acknowledged Plaintiff's statement in her Function Report that "[h]er aunt cooks but she can prepare a sandwich. Her aunt helps her with household chores and reminders to take her medications, etc." (R. 13.) Moreover, the ALJ took note of Plaintiff's testimony at the administrative hearing that she lives with relatives, helps with certain household chores, shops with her aunt, goes to school, does volunteer work, and gets along with teachers and classmates. (R. 14.) Thereafter, the ALJ

---

refers to an ALJ's credibility determination regarding a claimant's own statements of symptoms or pain. 1996 WL 374186 (S.S.A. 1996). Evaluation of evidence from "other sources," such as family, is governed by Social Security Ruling 06-03p. See 2006 WL 2329939, at *6 (S.S.A. Aug. 9, 2006) ("In considering evidence from 'non-medical sources' who have not seen the individual in a professional capacity in connection with their impairments, such as spouses, parents, friends, and neighbors, it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence.").

explicitly discussed Ms. Murrell's testimony,[6] stating as follows:

> Claimant's aunt, Ms. Murrell, testified that her niece no longer lives with her but she still sees her every day. She feels that claimant has a short attention span, because she starts things and then stops. Claimant has asthma and had a seizure last summer. Anything may bring on her depression. Claimant now lives with her uncle and brother. Ms. Murrell cares for both claimant and her uncle, who has health issues. Claimant isolates herself but she gets along with neighbors and storekeepers.

(R. 14.) Ultimately, although the ALJ did not completely discredit Plaintiff's testimony, he declined to credit it to the extent Plaintiff suggested she was unable to do an kind of work. (R. 15.)

Given this discussion, the Court finds no error in the ALJ's analysis. The ALJ directly addressed Ms. Murrell's testimony in the course of his ruling. Although the ALJ did not explicitly assess the credibility of Ms. Murrell's testimony or assign it a particular amount of weight, a fair reading of the ALJ's decision suggests that he implicitly made such an assessment. Ms. Murrell's personal observations of Plaintiff were largely repetitive of Plaintiff's own testimony. Thus, when the ALJ found Plaintiff's testimony not credible, he made an identical finding as to Ms. Murrell's testimony. See Smith v. Astrue, No. Civ.A.09-422, 2013 WL 3424086, at *25 (D. Del. Jul 5, 2013) ("[T]he wording and order of the ALJ's decision provides strong indication that (because of the similarity between Mrs. Smith's personal observations of her husband's health and Smith's own testimony on these points) when the ALJ found that Smith's testimony was not credible, the ALJ was also making the same finding as to Mrs. Smith's testimony.").

---

[6] The Magistrate Judge suggests that the ALJ's only discussion of Ms. Murrell's testimony was "in the introduction of his decision." (R&R 13.) This is incorrect. The ALJ's discussion of Ms. Murrell's testimony was within the body of the decision under the section discussing the medical evidence and Plaintiff's testimony and formulating the RFC.

Moreover, even were the Court to find that the ALJ erred in not specifically indicating the weight he gave to Ms. Murrell's testimony, any such error is harmless and would not have changed the outcome of the case. Both Plaintiff's testimony and Ms. Murrell's similar testimony suggested that Plaintiff is limited in some respects by her impairments, but that she can do household chores, attend school, do volunteer work. Indeed, Ms. Murrell testified that many of the things she did for Plaintiff were out of habit and based on an "assum[ption]" that she could not do them. (R. 54.) Relying on that testimony, the ALJ determined that Plaintiff retained the ability to manage the mental demands of some competitive work not requiring complicated tasks despite the limitations resulting from her impairment. (R. 15.) Substantial evidence of record clearly supports that credibility finding. It is abundantly obvious that, on remand, the ALJ would simply discount Ms. Murrell's credibility for the same reasons that she discounted Plaintiff's claims of complete disability. See Terrey v. Astrue, No. Civ.A.06-1959, 2007 WL 1237936, at *4 (E.D. Pa. Apr. 25, 2007) (finding ALJ's failure to discuss claimant's wife's credibility and failure to mention the testimony of another witness to be harmless error, where it was obvious that, to the extent that the ALJ discounted the credibility of these witnesses, she did so for the same reasons that she discounted the claimant's own testimony, in light of the objective medical evidence, as any "further discussion of the credibility of these two witnesses would not have changed the outcome of the case"); Cramer v. Astrue, Civ.A.No.10-125E, 2011 WL 4472847, at *8 (W.D. Pa. Sept. 26, 2011) ("We find that the ALJ properly considered all the evidence and was not required to specifically discuss each letter from [plaintiff's ex-wife and girlfriend] . . . such evidence was cumulative of plaintiffs testimony which was rejected on the basis of lack of credibility and no doubt would have been rejected for the same reason . . . . Remand would not

14

have changed the outcome."). Therefore, the Court sees no basis to remand on this issue.

IV.     CONCLUSION

Although the Court agrees with the Magistrate Judge that the ALJ's opinion is far from perfect, perfection is not the standard by which such decisions are reviewed. Rather, the Court finds that substantial evidence supports the ALJ's finding of "not disabled" and that any error committed by the ALJ is harmless and does not affect the outcome of the case. As remand will likely not result in any different result, the Court will sustain Defendant's Objections and affirm the decision of the Commissioner of Social Security.

An appropriate Order follows.